ROANE,, Judge.
The principal question in these causes is, whether the property of the certificate in question passed to the present appellant, by the bona fide sale, found by the verdict to have been made by a vendor, having himself no title?
It is certainly a general rule, that the title to personal goods will not pass without the assent of the owner; but this rule has admitted of certain exceptions, for the benefit of commerce, and on the principle of permitting a.particular injury, rather than a general inconvenience.
In the case of Miller v. Race, 1 Burr. 452, it was decided, that trover would not lie for a bank bill under cir *440 cumsiances like the present; and by examining the reasoning on which the decision in that case was founded, we shall be enabled to decide this.
Lord Mansfield, in delivering the opinion of the Court in that case, said, no doubt an action will lie upon the general course of business and from the consequences to trade; which would be much incommoded by a contrary decision. That the fallacy of the argument for the defendant, depended on comparing bank notes to what they do not resemble; namely, to goods, securities, or documents of debts. Whereas, bank notes were neither the one nor the other; but were universally treated as money by the general consent of mankind; which gives them the credit and currency of money, to all intents and purposes. That they were considered as money itself; since receipts are given for them as for money, and they pass by will, as cash; that it was necessary for the purposes of commerce, that their currency should be established and secured; and that the true reason, why they and money are not recoverable, is, that they have passed into currency.
These principles appear to exclude military certificates; which are not considered as money, nor do they pass as such. They are less valuable than money, and are considered as mere documents of debt, as the act, providing for the issuing of duplicates, proves.
There are in England, some cash notes and bills of exchange, which stand on the same ground in this respect with bank notes; for instance, notes payable to bearer; which, in Grant v. Vaughan, [3 Burr. 1516,] Lord Mansfield said, it would be absurd to endorse; and which in Cunningh. 133, and [Crawley v. Crowther,] 2 Freem. 257, are said to be like so much money to whomsoever the note is given. This is also the case with respect to bills of exchange having a blank endorsement: Which are said, not to be different from notes payable to bearer; and, that both go by delivery; and that possession proves property in both cases. Peacock v. Rhodes, Dough 614. These two descriptions of paper, therefore, have this quality, not only from their generally passing as cash amongst merchants, but also from the circumstance of the bearer being by the very terms of the note, or endorsement, entitled to the money.
.But, I can find no instance where an ordinary bill of exchange or note payable to A, has been held to be the pro *441 perty of B, without any transfer by A; however much the circulation of such bill and note is favored in England.
But, the claim of the appellant to the property in question, is less strong, than even in the case of a bill of exchange payable to an individual. For, military certificates are not made negotiable by any statute; and have never, in fact, circulated generally amongst the people; at least since the expiration of the act calling them in by taxes. And, if that act might be supposed to have given them the quality of a currency, during its existence, that quality has ceased since its repeal; and, therefore, in this respect, these certificates now (if they were ever analogous to money,) stand on a common ground, with the former paper money.
If, then, these certificates fail in their analogy to bank hills, notes payable to bearer, &c.; if they are not considered as money, but as mere evidences of debt; if the free circulation of them is not essential to commerce, why should we vary their fate, from that of chattels and documents in general? Why place them on the high ground, upon which money, or papers (which are universally considered as money) are, in this respect, entitled to stand?
Such is my opinion upon the principal question, growing out of the special verdict, whereon the decree in the suit in Chancery is grounded.
It now remains to say, whether the judgment of the District Court on that verdict, or the decree of the High Court of Chancery thereupon, shall be affirmed?
The bill in Equity on which that decree was founded was an original bill, stating reasons why the first verdict and judgment at law should not be conclusive, but be in-joined; and praying, that another trial of the issue might be had in some Court of Law,' and for general relief. It made a case proper, as is supposed (on the authority of decisions here,) for the interposition of a Court of Equity; which would justify the Court of Chancery in directing another trial of the issue in some Court of Law, which, when certified to that Court, would be the foundation of a final decree; and, accordingly, that Court did direct another trial of the issue to be had in the same District Court, and that the verdict thereupon'should be certified to the High Court of Chancery.
Now, as a Court of Equity ought not to interfere in granting new trials in such cases, unless a case is made, by *442 the bill, rendering its interference proper, so, when such circumstances do exist, and the Court of Equity has got possession of the cause, it may proceed finally therein; with power, nevertheless, to require the aid of Courts of Common Law and juries in deciding those matters of law and fact, which may occur in the progress of the cause. * This was the object of the Court of Chancery, in directing an issue to be tried and certified in the present case; and that Court did right in decreeing thereon when certified; and the decree rendered, was for the reasons already given upon the principal question, right in substance; and ought, I think, to be affirmed.
But, the District Court, not satisfied with trying and certifying the issue under the order of the Court of Chancery, proceeded also to render judgment on the verdict found on the trial of the issue, one month after the present decree was actually made thereupon, in the Court of Chancery ; and the question now is, whether the last-mentioned judgment should be affirmed or reversed?
Whatever may be the power of a Court of Equity, in granting a new trial after a verdict and judgment at law, as to leaving the cause to be finally decided upon by the Court of Law, and letting in a second judgment to be given thereupon by such Court, (the first judgment not being reversed or avoided by a Superior Court of Law, but only injoined by the Court of Equity,) I hold it to be a clear principle, that if the Court of Equity directs the verdict to be certified in order to further proceedings, it may go on to make a final decree therein, (the case being proper in other respects;) and that a Court of Law, acting on such verdict thereafter, acts without authority.
I have said, that the decree of the Chancellor was in substance right; but, I think he erred in decreeing an additional sum of 521. 5s. to be paid in the event of the nondelivery of the certificate: that sum, being the excess of the damages found by the second verdict, above that found by the first, and was added by the jury by some Rule, (as the increased value of the certificate or the like,) which is not disclosed to the Court. But, there was no objection to the damages found by the first jury on the part of Rucker; he was satisfied therewith, although an objection came from Wilson that they were excessive. That estimation of the value, therefore, was proper; and should be *443 adhered to, with interest up to the present time, in case the certificate is not delivered; especially, as this is a hard case on the appellant, being the innocent purchaser of the certificate for full value, and without notice of its being lost. With this variation, I think the decree of the Court of Chancery right, and ought to be affirmed.
FLEMING, Judge.
Concurred, that for the reasons already given, the property of the certificate was not changed, by the sale to Wilson; and that, as it was an issue out of Chancery, and the verdict ordered to be certified into that Court, the District Court ought not to have proceeded to judgment on the verdict; but, that the Chancellor did right, in proceeding to make a final decree upon it: Which ought to be affirmed, except as to the alternative right of delivering the certificate, instead of paying the money, and except as to the 521. 5s. improperly added to the amount of the first judgment.
CARRINGTON, Judge.
As to the main question, concerning the property of the certificate, and the liability of Wilson to pay for it, I have no doubt; and, consider the ease in that respect to have been rightly decided, both by the District Court and the High Court of Chancery.
But, here appears to have been two Courts going on at the same time upon the same subject, and the records unfold the singular case of a decree in Chancery anil a judgment at Law, for the very same thing; and both liable to be enforced: Which cannot be right; and, therefore, this Court must decide to which of those judgments Wilson must submit.
The bill alledges unfairness in the trial, and, therefore prays that a new trial may be had in some Court of Law; and concludes with asking for general relief.
Now, when the new trial was awarded, the purposes of the bill were answered; and there, the interposition of the Court of Chancery should have ceased; unless, further equitable circumstances should have required its aid.
But, instead of this, that Court goes on to direct the verdict to be certified into Chancery, before the determination of the point of law was had: Which I think, was improper; and, that the Chancellor ought to have left the further decision of the case to the Court of Law. Accordingly, the District Court did proceed to a final judgment upon the verdict, in favor of the plaintiff at law. From *444 which, I think they were not restrained; especially, as there was no injunction against the plaintiff at law proceeding to judgment. The District Court, therefore, appear to me to have proceeded regularly, and the Chancellor otherwise.
But, admitting the Court of Chancery to have acted rightly in proceeding further in the cause, still I think the Judge of that Court erred in several respects.
For, the judgment at law is for an adequate sum in damages, for the injury sustained; hut the decree in Chancery gives Wilson the alternative of either returning the certificate or paying the value; whereas Rucker has no alternative, but is obliged to take whichever of them Wilson may think proper to give him. So, that the advantage lies on the side of Wilson altogether: who will restore the certificate if sunk in value, and if it rises, will pay the damages. But, this destroys all reciprocity, and may operate very unequally with regard to Rucker; who may thus be loser by depreciation, but cannot gain, should the certificate rise in value.
The novelty of the case produces some difficulty; but, upon the whole, I think the best decision will be, to affirm the judgment at Law, and reverse the decree of the Chancery, after the award of the new triaL
LYONS, Judge.
The property of the certificate was, certainly, not changed by the sale; and, therefore, the opinion of both Courts was right upon that point. But, as to the other question; I am very'clear, that the Court of Chancery did right in proceeding to a final decree upon the verdict; and, that the District Court ought not to have rendered judgment on it, but should have directed it to be certified into the Court of Chancery.
For, the Court of Chancery having once obtained jurisdiction of the cause, might proceed to make a final end of it; and, for that purpose, might call for the assistance of a jury on any-<point of fact necessary to be ascertained; and was authorised to direct that their verdict should be certified.
Nor is it material, whether the Chancellor ordered the fact to be enquired into, upon an entire new issue, made up in his Court, or that a new trial of the former cause should be had. Because, in either case, it is a trial had by his order; and the verdict is subject to his control. For, the order, in such a case, is not intended to restore the *445 cause to the Court of Law; but, merely to ascertain facts, which are important to be known to the Chancellor, before he proceeds to a final decree. The Chancellor, therefore, was correct in directing the verdict to be certified ; and, consequently, the District Court ought not to have proceeded to judgment.
This, which is so clear upon principle, receives additional weight from the following circumstance. The decree of the Court of Chancery does not set aside the first judgment; and, whether that Court will grant a perpetual injunction or not, depends upon the event of the new trial. But, until the verdict is certified, that event cannot be known; and, therefore, without the certificate, the cause would remain forever upon that docket.
But, if it was necessary to return the verdict there, in order to finish the cause, it is certainly more proper that an end should be put to it, in that Court, altogether, than that the two Courts should be proceeding upon the same cause at once; and, perhaps, giving contrary judgments upon it.
Besides, it often happens that the merits of the cause in equity, will essentially depend upon the result.of the trial; and, therefore, the verdict must go into the Court of Chancery, in order to enable that Court to proceed to judgment upon the equity of the case. Is it not better, then, that the verdict should always be returned there, than that the two Courts should be scrambling for the jurisdiction? The Court of Chancery, perhaps, insisting that it is necessary, in order to complete its decree, that the other Court should certify the verdict, and the Court of Law contending, that there is no point of equity which should draw it back again to the Court of Chancery: A contest which, certainly,
ought to be avoided; and which can never take place, if the practice be adhered to, of certifying the verdict into the Court of Chancery; which, having general cognizance over the whole case, can decree what is proper -between the parties upon all the points in the cause'.
I am, therefore, of opinion, that the District Court erred in proceeding to judgment on the verdict, instead of ordering it to be certified into the Court of Chancery; and, consequently, that their judgment should be reversed, and an order for such a certificate made. But, upon the other record, I think the decree should be affirmed, with the variations which a majority of the Court have directed to be inserted in the decree, which is now to be entered.
*446 PENDLETON, President.
The Court is of opinion, property was not changed by the loss of it, but remained in the appellee, and did not vest in the appellant, by his purchase from the finder; although fairly made, for a valuable consideration paid, and without knowing it had been lost and found; since there was no assignment endorsed thereon, by the appellee. That, although it is stated to have been the custom, for these certificates to pass from hand to hand, and for the interest to be drawn at the treasury, by the holder, without an endorsement from the original payee, yet such a practice was at the risk of the receivers respecting the property, and could not amount to such a custom, as would change the law; which has established, that a sale of personal property, stolen or lost, does not change the right of the proprietor: A rule, which is never departed from, but when it is to yield to some great national convenience; as in England, to,, sales in open market, * and to bank notes and other papers there, payable to bearer or to order; which daily circulate as money, to none of which does the present paper assimilate. It contains no promise to pay to any person, or by any person; but it is a mere certificate from a public officer, that Rucker, as a Captain of the State infantry, is entitled to receive the money at a future day; with interest from a prior day, agreeable to an act of Assembly ' referred to. In short, it is, as it was truly stated by Mr. Marshall to be, a mere- document, or evidence of a debt due, and not a circulating medium. If it be said, that it was intended to give the officers a credit, the same may be observed of bonds and other transferrable securities; but yet the property, in those papers, will not pass by delivery, without assignment; and, therefore, that cannot be the criterion by which the distinction is to be fixed.
Bank notes are payable on demand, to A. B. or hearer; so as to be the same, as if payable to the bearer: Which a mere delivery makes the holder to be.
Bills of exchange, and promissory notes, are payable to A. B. or or Ter; but I doubt whether they are negotiable until they are endorsed by A. B.; either by signing his name *447 in blank, or assigning it to C. D. or order, which is the same thing: since the holder may erase that, and let it stand in blank. But as the payee may, by a special endorsement, “to pay to C. D. only, or for the use of the endorser,'restrain the negotiability and circulation, it would seem that his endorsement being necessary to give it circulation, a loss before that is made would not change the property.* However, be that as it may, the present certificate not being payable to bearer or order, the property could not be changed but by assignment, under our acts of Assembly respecting bonds and promissory notes: The rule concerning which papers, that the property is not changed by loss without assignment, applies, of course, to this paper.
And, in this opinion, the Court are unanimous; and the right on the merits has been properly decided, in both the Courts below.
But, a difficulty arises on the forms of proceeding; which, it appears to me, is occasioned by our having heard the cases together, and not distinguishing, but blending together our different jurisdictions. I have, therefore, considered the cases distinctly; as if one had come before the Court without the other.
1. At Common Law, an action of trover is brought to recover the value of a paper lost, (a question which was proper for a Court of Law;) and, on not guilty pleaded, a general verdict is found, and a judgment entered for the plaintiff. No motion is stated to have been made for a new trial; and the cause was, so far, out of that Court, who could not act further in it, without the intervention of a Superior Court of Law, or a Court of Chancery; whose jurisdiction, to grant new trials for good cause, in such a situation, is not disputed; but has been often affirmed.
So far, there is no error in the District Court; as no motion was made to it for a new trial.
But, then comes an order of Chancery, by consent of parties, that the verdict should be set aside, and a new trial of the issue had between the parties in the same District Courtj and that the verdict thereupon should be certified to the Court of Chancery. Under this order, the District Court were restored to their original jurisdiction over the cause; and were to proceed toa new trial and *448 judgment at law, in the same manner as if the new trial had been granted by themselves in due time.
The question, therefore, is, whether they were or were not obliged to certify the verdict to the Chancery? A new trial is had; a special verdict (not complained of) is found, settling the damages and submitting to the Court of Law, in the legal manner, whether it shall be for plaintiff or defendant? The Court proceed to give such judgment upon it as this Court would have given, and from that the appeal comes. Will this Court, sitting in their law character, say, there is error in this judgment and reverse it? Yes, say gentlemen, there was error; because the Court had no power to give judgment, but were to certify the verdict into the Chancery. A Court of Law to certify a special verdict to the Chancellor, for him to decide the law upon it! This seems novel; and not only breaking the line of jurisdictions, but inverting their order by a transfer of one to the other.
The verdict was to depend on -the opinion of the Court, upon the law; and was not complete until that was given.
On this point, therefore,' I am clearly of opinion, 1st. That the Chancellor had no power to restrain the Court from proceeding to judgment, however he might after-wards have relieved against it upon satisfactory and equitable grounds. 2d. That, if he had such power, he did not exercise it by the order to certify the verdict, as that was not inconsistent with their giving judgment upon it, which he could not restrain.
Therefore, my opinion at law is, that there is no error, and that the judgment ought to he affirmed, although a majority of the Judges are for reversing it.
2. Then take up the Chancery record, and consider it as in that Court.
The bill states not a word, upon the merits, tending to make it proper for the jurisdiction of a Court of Chancery. It was an action of trover and conversion for a military certificate; and good reasons are stated for granting a new trial, which is the prayer of the bill; an injunction was granted, and the defendant, without answering, goes into Chancery and consents to anew trial; which was ordered, according to the prayer of the bill. So, that the only ground of application to a Court of Equity being thus effected, what had the Court of Chancery further to do with the 'cause, but to- regulate the costs? The verdict, however, was ordered to be certified into the Chancery; *449 although that Court, not having original jurisdiction, could not enter judgment for plaintiff or defendant upon it. I am persuaded, that worthy Judge, from his multitude of business, took up the idea of issues directed out of that Court, in cases commenced there, and in which he has original jurisdiction, and did not attend to the difference.
When, in such cases of original jurisdiction on the merits, the Chancellor doubts of a fact, he directs a proper issue to be made up, and sends it to any Court of Law he pleases to be tried by a jury. In such a case, the Court of Law has nothing to do with the cause, but to superintend the fairness of the trial; and the verdict is certified, and becomes part of the evidence, on which the Chancellor founds his decree.
In the present case, there was no particular issue to be tried; but a new trial of the whole merits, upon the record in that Court, where the record at law remained, and who were to finish the suit at law, and no further jurisdiction remained in Chancery; unless upon a new ground of equity arising out of the subsequent proceedings. There was, therefore, error in returning the cause and directing the certificate of the verdict to be made; and of course, in all the subsequent proceedings by the Chancellor. For, he should have decreed as to the costs and put an end to the suit.
But supposing he meant, by directing the verdict to be certified, to keep the case open for application on any new matter of equity arising on the new trial, and that this was right, what should he have done upon the return of the certificate?
A special verdict is stated to have been found, and no complaint of a mistake of facts, or unfairness in the trial. If such a special verdict had been certified, on an issue properly directed out of Chancery, it would have been proper for that Court to have sent it to the General Court for their opinion upon the law. By these provisions, the power of the Chancellor to interfere in some law cases, is rendered beneficial to society, without violating the great law principle, “ the trial of facts by a jury, and of law by Judges.”
But, in this case, the Chancellor should have said, “T had no other jurisdiction in this cause, than to enquire into the fairness of the first trial, which was admitted to have been unfair; but, as another trial has since been had, to the fairness of which no exception is taken, my juris *450 diction is now at an end; and the bill ought to he dismissed and the costs regulated.” Which should, in my opinion be the decree of this Court. But, a majority of the Court differ from me in this point also.
Ross v. Pynes, [3 Call, 568,] and Foushee v. Lee, are mentioned as instances where, on new trials directed by the Chancery, the verdicts were to be certified.
In both, the new trials were in different Courts from those in which the common law judgments were obtained; those Courts had no records before them, and could only take and certify the'verdicts.
These were to he certified to the Chancellor, 'to enable him to decide the injunctions, and not to decree upon the merits. Accordingly, in Ross v. Pynes, upon the second verdict the injunction was dissolved, and in the other case it was made perpetual; because the second verdict was against the first.
As the second verdict in the present case, accorded with the first, the^ injunction should have been dissolved, and the Court at Law left to proceed to judgment, on the special verdict. But, a majority of the Court are of opinion, that the following decree and judgment ought to be entered.
In the Chancery cause.
“ The Court is of opinion, that the said High Court of Chancery ought not to have permitted the appellant to be discharged from the damages recovered by the judgment in the proceedings mentioned, by his delivering up the certificate and paying the interest received, since that option gave to him an unreasonable advantage; and in the other alternative, the modification of relief is improper; and, that the said decree is erroneous. Therefore, it is decreed and ordered, that the same be reversed and annulled, and that the appellee pay to the appellant, as the party prevailing against the decree for relief in the case of his not accepting the alternative improperly allowed him, his costs: And this Court proceeding to make such decree, as the said High Court of Chancery should have pronounced, it is further decreed and ordered, that the appellant pay to the appellee one hundred and seventy-two pounds current money, together with interest at five per centum per annum, from the nineteenth day of May, 1790, till payment, and the costs in Chancery and in the District *451 Court at Law; and that all further proceedings in the said suit at law in the District Court be perpetually injoined.”
In the Appeal from' the District Court.
“ The Court is of opinion, that the said judgment is erroneous in this, that the said District Court proceeded to give judgment on the verdict, when it should have been certified to the High Court of Chancery: Therefore, it is considered, that the same be reversed and annulled; and, that the appellant recover against the appellee his costs, by him expended in the prosecution of his appeal aforesaid here: And this Court proceeding to make such order, as the said District Court ought to have made, it is ordered, that the said verdict be certified accordingly to the said High Court of Chancery.”
LYONS, Judge.
If this certificate had been payable in taxes, at the time it was lost, I should have thought differently. Otherwise, Sheriffs .and public officers might have been ruined, and infinite mischief would have ensued.
PENDLETON, President.
That observation would be correct, if the owner had put his name upon the back; because that would have given circulation to it. But, without such endorsement a man would not lose his property, by a sale of the certificate by one, who had no right.

[* See Pryor v. Adams, ante, 392.]

 [In the city of London. This custom has not been adopted in the United States; and has been restricted by the courts in England. See Wilkinson v. King et al. 2 Campb. R. 335; Wheelwright v. Depeyster, 1 Johns. R. 472; Dame v. Baldwin, 8 Mass, R. 518; Hosack v. Weaver, 1 Yeates, 474; Easton v. Worthington, 5 Serg. & Raw. 130; Lecky v. McDermott's admr, 8 Serg. & Raw. 500.]

[* See on this point, Ancker v. The et al. v. Friend & Scott, 1 Rand. 14.] Bank of Eng. 2 Doug. 637 ; Myers