Tucker, Judge.
The bill alledges, that Johnson was the owner of a military certificate bearing interest, which he delivered to Robert Yancey, to bring down to Richmond and obtain a warrant for the interest. That Yancey carried it to the auditor’s office; who, being at that time engaged in some other business, told him if he would leave the certificate, and call again, the warrant should be made out by that time. That Yancey did leave it in the office, but when he called again, it could not be found. That it had been entirely lost. And that the auditor afterwards told one Poindexter, he had heard that captain Singleton, had a certifi *132 cate of that description ; it having beep issued as payable to one Coates, and for the sum of £ 47 or £ 48.
The bill is one with a double aspect, praying, first, that the auditor may be decreed to issue a new certificate, and to grant a warrant for all arrears of interest; or, if the court shall be of opinion that the commonwealth is not liable for the renewal of the certificate and payment of interest, in consequence of a loss happening through the negligence or default of the auditor as a public officer, that he be decreed to make compensation for the loss in his individual capacity. The chancellor dismissed the bill.
The auditor, in his answer, positively denies that the certificate was delivered to him; or that he ever saw it.-
Robert Yancey swears, “ That he applied to the auditor for a warrant for the interest, but was told it could not be had then; that if he would leave it in the office, it should be made out, and given him at a time then mentioned ; that he, during his stay in Richmond, made frequent application for the certificate and warrant, but could not obtain it.”
James Poindexter says, he was informed by the auditor that Mr. Yancey handed him, or handed in, a certificate; and that the interest was made out, and laid on the table according to the best.of his recollection. This is all the testimony upon that point, and I feel myself incapable of deciding that this indirect testimony should countervail the positive denial by the auditor that the certificate was ever delivered to him, or that he ever saw it. For Yancey does not swear that he left the certificate, as the auditor told him he might; nor does Poindexter swear positively to the' information he received from the auditor, but mentions it only according to the best of his recollection; which may possibly have deceived him; more especially, as the' answer of the auditor is positive, and not reconcileable to the information which Poindexter supposes he gave him.
Were I satisfied upon this point, and there were no other room for doubt in this case, I should have very little hesitation in deciding that the commonwealth was bound to grant *133 a new certificate for the principal, and a warrant for the interest. The auditor cannot perform his duty, unless the certificate is given up to him, to examine and compare with his books, or other means by which he may know it to be genuine. He is then to make out a warrant corresponding with it, for the interest thereon due; he is to make an entry in his hooks of his proceedings therein. Can this be done without the paper being delivered to him ? From that moment, it is in the custody of the law, until he has performed all that may be necessary, and redelivered it to the ■ party or his agent. If it be lost, the commonwealth, who is not only the debtor, but may be regarded as having the certificate delivered up to it, (being delivered to a public officer, for a public purpose,) is bound to recompense the loss. 3 T. Rep. 760. Nor have I much hesitation in considering Yancey, whose credit is not attempted to be impeached, as a competent and credible witness in this case. It would be of mischievous consequences to society, if it were ever held that an agent, who does not appear to have any interest whatever in a transaction, shall be deemed an incompetent, or not a credible witness, because by some act of neglect or inattention during the transaction in which he has no interest, he may possibly become liable for damages to the person for whom he acts. Here, Yancey had no interest in obtaining a warrant for the money for Johnson, unless we suppose what neither the law, nor any testimony or circumstance in the case, will permit us to suppose, that he intended, if obtained, to convert it to his own use. The certificate itself being not transferrable by delivery only, without an assignment, strengthens this conclusion in my mind. The case in 1 Salk. 289, cited by Mr. Randolph, is stronger than this. There, a son who had embezzled his father’s money, was permitted to prove the delivery of it to the defendant, against whom the father had brought an action of trover for it, the testimony of the son being corroborated by other circumstances. And, in 2 Stra. 507, cited also, by him, an original debtor was allowed to prove a payment *134 of the debt, by the plaintiff in that suit, at the request of the defendant in behalf of the debtor. And the case in Buller, 77, cited by Mr. Call, does not, I apprehend, apply present; for if the master suffer in damages by the fault of the servant, the servant will be liable over to the master, against whom the damages for this fault may have been recovered for the amount. The case of Lucas v. Haynes, 2 Ld. Raym. 871, is a parallel case: where the person who carried a bill of exchange endorsed in blank to the drawee for acceptance, was admitted as a witness to prove the delivery; and held in the king’s bench that he might.
But although Yancey’s testimony, had it gone further, would have weighed with me in opposition to the auditor’s answer, if supported by other circumstances, yet taking iit as it stands, I cannot think it sufficient to overbalance the auditor’s answer, even with the aid of Poindexter’s evidence, on which I have already said enough. Nor can I think, even were the evidence more satisfactory, the auditor liable, unless in case of actual misfeasance, which is not charged.
But were I satisfied upon the point of the actual delivery of the warrant into the auditor’s office, in any manner usually observed in the office in similar cases, I should still doubt upon another, namely, whether the complainant is entitled to a renewal of this certificate, (which, by his own shewing, was issued to one Coates, and made out in his name,) without making the original proprietor a party in the cause? For, in Wilson v. Rucker, 1 Call, 500, it is expressly laid down as the unanimous opinion of the court, “That the property in these papers, will not pass by delivery, without assignment.” The complainant hath not shewn, nor even stated in his bill, that he was assignee of Coates, though he claims the property in the certificate. Under the decision in Wilson v. Rucker, he could, at most, have only an equitable title, united with the possession, but the legal title, even in that case, would have been in Coates. Can this court decree a renewal of the legal evidence of a debt due from the *135 commonwealth, which is not, in its nature, transferrable by delivery only, to be made to one who does not shew a legal title without calling upon the legal proprietor to assert his claim? I apprehend not. And therefore think that the decree of dismissal must be affirmed; but I am willing that it should be done without prejudice.
Roane, Judge.
There is a defect in the appellants case, which cannot be got over. The certificate in question is admitted to have been granted to one Coates; and although the appellant may have acquired it for a hand fide consideration, yet, under the authority of Wilson v. Rucker, that does not give him a title against the true owner. Nothing but a regular transfer can give a title to a document of this sort. This transfer is not shewn in the present case. We are now in a court of equity, and equity delights to do complete justice, and make an end of the case before it. The court will not decree in favour of A. when by another suit B. may evict him, and when A. has it in his power, if he has title, to shew it in this action; and thus enable the court to do complete, and final, justice.
Besides, the proofs in the case seem to be defective. The defendant, Pendleton, swears in his answer, that the certificate was not delivered to him. This looks something like a negative pregnant, since it might have been delivered to his clerks, under the alledged custom, and thus, perhaps, been a delivery to him. I don’t know, however, whether his answer ought to be taken thus strictly. If it is not, there is a defect of proof to outweigh it.
Poindexter, indeed, shews an acknowledgment by Pendleton, that the warrant had been made out, which could not have been without a delivery; but what other proof is there, except that of Yancey ?
If Yancey was not strictly within the line of his undertaking to Johnson as agent, his testimony here would go to excuse his own deviation, and therefore is inadmissible. Whether he was, or not, depends upon the solution of the *136 main question, i. e. whether the leaving the certificate in the office was within the necessary course of proceeding? But there was better testimony than that of Yancey touching the delivery of the certificate; such as the registration of it in the auditor’s books, or the testimony of the clerks, who performed that service. Why were the latter not examined, or a certificate from the former produced ?
On these grounds I am for dismissing the bill without prejudice. The appellant may, if he pleases, come forward again on further proof; but my present impressions are that he cannot recover on the ground of the alledged delivery. The alledged custom is founded as much in favour of the convenience of the holder as of the officer; perhaps more so. No inconvenience could arise to the latter from observing a different rule, but the pressure of claimants; which might be avoided by a denial of admittance at such times, or a retreat by the officer to a more private place, or apartment: Whereas, on the part of the applicant, the inconvenience of frequent applications, or a continued attendance, is avoided. Is it not evident, that this practice consults the convenience of the latter as much as the former ? But the holder is not bound to deposit the certificate, nor the officer to receive it for safe keeping, but merely for registration and issuing the proper warrants, &c. If the officer does receive it for safe keeping, he gets no compensation therefor; he is not within the necessary line of his official duty, but consults principally the convenience of the holder. The holder, not bound to deposit, does it voluntarily, and at his own risk. He does it on the ground of personal confidence only. I admit, with the judge who preceded me, that the auditor’s duty to grant warrants induces the necessity of a delivery to him; but this delivery is to be understood as for that purpose only, and not for safe keeping for any length of time.
These are my general ideas at present. I will not, however, finally conclude the appellant; but, perhaps, it will be his best way to apply to the legislature, who will no doubt *137 do him justice. That body, too, might not deem itself bound to turn him round to shew a regular transfer, as we do, but consider the holder as the owner under the general practice of the country respecting papers of this sort. As to the second aspect of the bill, the defects in the case before stated, equally forbids a decree against the appellee in that view.
Fleming, Judge.
The answer denies that the certificate was delivered to the defendant; and the testimony does not shew, that he took charge of it. One of the witnesses says, indeed, that it was left in the office; but none of them prove' that it was put under his care ; and Yancey, the one who says he left it there, seems himself to have been negligent. I think, therefore, that the auditor had not such a custody of the paper, as renders either himself, or the public, liable for it. But, if he had, Johnson shews no right to the certificate; for it was not assigned to him, and bare possession is not enough, according to the decision in Wilson v. Rucker, 1 Call, 500. Besides, if he had shewn a title, his proper remedy would have been an action of trover against Singleton ; who, as one of the witnesses proves, was in possession of the certificate, at a subsequent period. I am therefore, for affirming the decree, but without prejudice to a future suit, if the appellant should, hereafter, be able to prove his title to the certificate, and supply the necessary evidence in other respects.
Carrington, Judge.
The testimony does not disprove the answer; which denies that the certificate was delivered to the defendant; and therefore, upon that ground, even if there was no other, the court did right in refusing relief. But, independent of this, the appellant shews no title to the certificate; for it is not assigned to him; and mere possession is not sufficient to prove that it belonged to him. Wilson v. Rucker, 1 Call, 500. It is not the duty of the auditor to take charge of the certificate; but the owner should *138 Wait, until the prior business of the office allows attention to his: and, if his impatience, or convenience, makes him prefer leaving the certificate in the office, he does it at his own risk; for it would be unreasonable to suppose that so many various claims should be attended to at once; or that the public officer, who has no interest in them, should be bound to take charge of the evidences respecting them, not only to his own peril, but to the hindrance of the office, and danger to the public, from mistakes and losses, which it might not be easy to foresee or prevent. There is no pretence then, for responsibility either on the part of Pendleton, or of the commonwealth. Besides that, Johnson does not shew any title to the certificate : the description of it is too imperfect: for the number, date, and service for which it was granted, are not proved; and the only account we have of it, is that given by himself; which barely states that it was a certificate for JS 4T. 9., and bore 6 per cent, interest : a description much too imperfect to be the foundation of a decree against any body. But as some person may have a just title to the certificate, and may be able properly to identify it, I am for dismissing the bill, without prejudice as to the commonwealth, but generally as to Pendleton.
Lyons, President.
If the appellant had shewn, title to the certificate, Coates ought nevertheless to have been a party to’the suit, as he had not assigned it, and might be interested in the event. The appellant shews no title however; and therefore, if there were nothing else in the cause, the decree would have been right upon that ground. But I am strongly inclined against the plaintiff upon the general question. For the certificate was left in the office for the convenience of the plaintiff, and not of the defendant; who was not bound to take charge of it; and, in fact, did not. It would therefore be rigorous, in the extreme, to hold either him, or the public, responsible for safe keeping, although he never-undertook it, and neither he, nor the state, was to derive any advantage from it. I am consequently of opinion *139 that the decree should be affirmed absolutely as to Pendleion, but without prejudice as to the commonwealth, if the appellant should hereafter be able to prove his right to the certificate, and supply the necessary evidence in other respects.