On an appeal from a decree of the High Court of Chancery rendered by the late Judge of that Court.
The bill alleges, that Johnson was the owner of a military certificate bearing interest, which he delivered to Robert Yancey to bring down to Richmond and obtain a warrant for the interest. That Yancey carried it to the auditor’s office, who being at that time engaged in some other business, told him if he would leave the certificate, and call again, the warrant should be made out by that time: that Yancey did leave it in the office; but, when he called again, it could not be found; and that it hath been entirely lost. That the auditor afterwards told one Poindexter, he had heard that Capt. Singleton had a certificate of that description, it having been issued as payable to one Coats, and for the sum of 47 or 481.
*The bill is one of a double aspect; —praying, first, that the auditor may be decreed to issue a new certificate, and to grant a warrant for all arrears of interest; or, if the Court shall be of opinion that the Commonwealth is not liable for the renewal of the certificate and the payment of interest, in consequence of a loss happening through the negligence or default of the auditor as a public officer, that he be decreed to make compensation for the loss in his individual capacity.
The auditor in his answer positively denies that the certificate was delivered to him, or that he ever saw it.
Robert Yancey swears “that he applied to the auditor for a warrant for the interest, but was told it could not be had, then ; that, if he would leave it in the office it should be made out and given him at a time then mentioned: that he, during his stay in Richmond, made frequent application for the certificate and warrant, but could not obtain it. ”
James Poindexter says he was informed by the auditor that Mr. Yancey handed him, or handed in, a certificate, and that the interest was made out, and laid on the table, according to the best of his recollection.
On a hearing, the Chancellor dismissed the bill, from which decree an appeal was taken to this Court; and the appeal coming on to be heard at the April term, 1804, in the name of Johnson v. Pendleton, auditor, &c. the decree of dismissal was affirmed, without prejudice.
The appellant then supposing that the Commonwealth was liable, in consequence of the act of Pendleton, who was one of her public officers, (though he might not be liable in his individual character,) proceeded to another hearing in the High Court of Chancery ; previously to which, he executed a release to Robert Yancey, who had been the bearer of the certificate, and whose testimony was objected to on that account; and he, moreover, proved by a further examination of John Carter, one of the clerks in the auditor’s office, that the certificate said to have been lost in the said office had been purchased by George Pickett, in whose possession he had seen it, but who could not recollect from whom he bought it.
The cause coming on again to be heard in the High Court of Chancery, the Chancellor decreed against the Commonwealth, the amount of the certificate with interest; from which decree the auditor, in behalf of the Commonwealth, took an appeal to this Court.
*The Attorney General, for the auditor, representing the Commonwealth, said that this was the same case which had before been decided, on the appeal of Johnson v. Pendleton, the late auditor. Neither Pendleton in his individual-character, nor the Commonwealth, whose agent he was, could be liable unless for gross neglect, (a) It is not, however, admitted that the Commonwealth would be liable for the act of her agent under any circumstances. The Court has already decided, upon the same evidence, that Pendle-ton was not personally responsible. If gross negligence had been proven, in him, he would have been individually liable: and this opinion of the Court may be considered as decisive of the question.
Randolph, for the appellee. The reservation in the decree in the case of Johnson v. Pendleton, the late auditor, shews that the Court did not decide the case as to the Commonwealth. It is not the same case; but, if it were, the Court might consider it as an original suit. Pendleton was exempted on the ground that there was no personal claim against him, he having acted as a public officer in the ordinary routine of his duty. The evidence, too, is different from that on which Johnson v. Pendleton was decided. Yancey’s deposition was objected to before, because he being the bearer of the certificate to the auditor’s office was interested in shewing how he had disposed of it. This objection has been removed by a release before his last examination. There is also further evidence derived from John Carter. In his former deposition, he spoke merely of the practice in the auditor’s office; in the present, he states that the certificate had been found and sold to George Pickett. It is admitted that Johnson was possessed of that certificate, in the same manner as others, who drew further certificates from the treasury; such as were entitled to draw interest. The custom at the treasury was, for the person who brought the certificate, to be considered as the actual owner. It was so considered till the case of Wilson v. Rucker,(b) was decided; and, even after that decision, the bearer was considered as the agent for the owner. This certificate *240 was earned to the auditor’s office, in order to obtain a warrant for the interest, and was lost in a public office. It was an acknowledged debt of the Commonwealth, on which the interest was to be paid: and the auditor was the agent of the Commonwealth in issuing a warrant for the interest. Compare this to the *case of a common person: a man says, “bring my bond to my agent, and he will pay you the interest:” if it be lost is not the principal liable? The auditor, being a public officer, and warned that the certificate which was lost belonged to Johnson, ought to have made a minute in his books; and when it was brought for final redemption, he ought to have stopped it, and told the holder that it was the property of Johnson. In the event of a suit against him, he might have defended himself on the principles of the case of Wilson v. Rucker. If the auditor had used common diligence, Johnson might have regained his certificate. But, suppose it had never been laid before the auditor, he ought to have given information to the treasurer that it was a certificate issued in the name of Coats.
The Attorney General, in reply. All that the Court meant to do, by the reservation, in the decree in Johnson v. Pendleton was to leave the case open. Although it is an original question as to the Commonwealth, yet it is a fair argument to say, that the Court having, on a similar evidence, decided that Pendleton the depositary was not liable; on a parity of reason the Commonwealth could not be liable. The certificate might never have come into the auditor’s office: it might have been paid into the treasury for taxes, or funded in the United States loan-office. This might have been done by the holder, notwithstanding the decision of the Court in the case of Wilson and Rucker. The President, in delivering his opinion, seems to admit the existence of the custom, to transfer these papers by delivery only; and this record supports the position; for Pickett was in possession of the certificate without asignment, or even knowing from whom he received it. If Johnson were entitled, at all, he ought to have gone against Singleton, or Pickett, in whose possession he knew the certificate was, and not against Pendle-ton, or the Commonwealth.
Curia advisare vult.
Wednesday, November 11. The judges delivered their opinions.
JUDGE TUCKER,
áfter stating the case, and observing that it did not materially vary from the case of Johnson v. Pendleton, late auditor, &c. decided at the April term, 1804, said that it might be satisfactory to refer to the opinion which he then gave. He recited the testimony of James ^Poindexter, stating, that he was informed by the auditor that Hr. Yancey had handed him, or handed in, a certificate, and the interest was made out and laid upon the table according to the best of his recollection. “This, said JUDGE TUCKER, is all the testimony upon that point, and I feel myself incapable of deciding that this indirect testimony should countervail the positive denial by the auditor that the certificate was ever delivered to him, or that he ever saw it. For Yancey does not swear that he left the certificate, as the auditor told him he might. Nor does Poindexter swear positively to the information he received from the auditor, but mentions it only according to the best of his recollection, which may possibly have deceived him, more especially as the answer of the auditor is positive, and not reconcilable to the information which Poin-dexter supposes he gave him.
“Were I satisfied upon this point, and there were no other room for doubt in this case, I should have very little hesitation in deciding that the Commonwealth was bound to-grant a new certificate for the principal and a warrant for the interest. The auditor cannot perform his duty, unless the certificate be given up to him, to examine and compare it with his books, or other means by which he may know it to be genuine: he is then to make out a warrant corresponding with it, for the interest thereon due; he is to make an entry in his books of his proceedings herein. Can this be done without the paper being delivered to him? from that moment it is in the custody of the law, until he has performed all that may be necessary, and re-delivered it to the party, or his agent. If it be lost, the Commonwealth, who is not only the debtor, but may be regarded as having the certificate delivered up to it, (being delivered to a public officer, for a public purpose,) is bound to recompense the loss. 3 Term Rep. 760 to 763,(a) cited by Mr. Randolph? the general reasoning in which seems to be sound law. Nor have I much hesitation in considering Yancey, whose credit is not attempted to be impeached, as a competent and credible witness in this case. — It would be of mischievous consequences to society if it were ever held that an agent, who does not appear to have any interest whatever in a transaction, shall be deemed an incompetent, or not a credible witness, because, by some act of neglect or inattention during the transaction' in which he has no interest, he may possibly become liable for damages to the person for whom he -'acts. Here Yancey had no interest in obtaining a warrant for the money for Johnson, unless we suppose, what neither the law, nor any testimony, or circumstance in the case will permit us to suppose, that he intended, if obtained, to convert it to his own use. The certificate itself being not transferable by delivery only, without an assignment, strengthens the conclusion in my mind. The case in 1 Salk. 289,(b) cited by Mr. Randolph, is stronger than this. There a son, who had embezzled his father’s money, was permitted -to prove the delivery of it to the defendant, against whom the father had brought an action of trover for it, the testimony of the son being corroborated by other circumstances. And in 1 Strange, 507, (c) cited also by him, an original debtor was allowed to prove a payment of the debt, by the plaintiff in that suit, at the request of the defendant, in behalf of *241 the debtor. (1) And the case in Buller, 77, cited by Mr. Call, does not, I apprehend, apply to the present: for if the master suffer in damages by the fault of his servant, the servant will be liable over to the master against whom the damages for this fault may have been recovered, for the amount. The case of Lucas v. Haynes, (a) is a parallel case; where the person who carried a bill of exchange endorsed in blank to the drawee for acceptance, was admitted as a witness to prove the delivery : and held in K. B. that he might.
1 ‘But although Yancey’s testimony, had it gone further, would have weighed with me in opposition to the auditor’s answer, if supported by other circumstances, yet taking it as it stands, I cannot think it sufficient to over-balance the auditor’s answer, even with the aid of Poindexter’s evidence, on which I have already said enough. Nior can I think, even were the evidence more satisfactory, the auditor liable, unless in case of actual malfeasance, which is not charged.
“But, were I satisfied upon this point, of the actual delivery of the warrant into the auditor’s office, in any manner usually observed in the office in similar cases, I should still doubt upon another. Whether the complainant is entitled to a renewal of this certificate, (which, by his own shewing, was issued to one Coats, and made out in his name,) without making the original proprietor a party in the cause. For, in Wilson v. Rucker, (b) it is expressly laid down as the unanimous opinion of the Court, ‘that the property in these papers will not pass by delivery without assignment.’ The complainant '"hath not shewn, nor even stated in his bill, that he was assignee of Coats, though he claims the property in the certificate. Under the decision in Wilson v. Rucker, he could, at most, only have an equitable tille, united with the possession; but the legal title, even in that case, would have been in Coats.
“Can this Court decree a renewal of the legal evidence of a debt due from the Commonwealth, which is not in its nature transferable by delivery only, to be made to one who does not show a legal title, without calling upon the legal proprietor to assert his claim, (c) I apprehend not, and, therefore, think that the decree of dismissal must be affirmed; but X am willing that it should be clone without prejudice. ” As to the present case of The Auditor v. Johnson’s Executrix, JUDGE TUCKER was of opinion that the decree be reversed.
JUDGE ROANE
said that he had perused the case, as formerly decided by this Court, and could not perceive any variations in it. He was, therefore, of opinion that the decree be reversed.
JUDGE FLEMING.
This appears to be in substance precisely the case of Johnson v. Pendleton, decided in this Court, the 4th of May, 1804, with this small variance in the evidence which does not affect the merits of the cause. In that case James Poin-dexter deposed that John Pendleton, then auditor of the public accounts, informed him that he had discovered in the hands of Capt. Singleton, a certificate which Mr. Johnson said he had lost, or words to that effect; — than in the present ease, John Carter, in his affidavit saith, that, after the time when the certificate was said to be lost or mislaid in the auditor’s office, the said certificate was purchased by and in the possession of George Pickett, who said he could not recollect of whom he bought it, as he had made no memoradum in his book to shew that particular circumstance.
The decree is therefore erroneous, and is to be reversed.

 Jones on Bailments, 117, 120.

Ob) 1 Call, 500.

 Eenn et al. v. Harrison.

 Anonymous.

 Brownson v. Avery.

 See as to the admission of witnesses from necessity, 1 Str. 617, Martin et al. v. Horrel: 2 Johnson’s (N. Y.) Rep. 189, Burlingham v. Deyer.

 a Lord Raym. 871.

 1 Call. 614.

 See L. V. edit. 1786, Oct. 1783, c. 1, s. 1, 5, May, 1783, c. 8, s. 12.14, & c. 38. s. 8, as to these certificates.