Carr, J.
This case is exactly that of Marks and Morris, and brings under review the correctness of that decision. *501 It is there decided, that the third section of our statute against usury, is limited to the case of bills of discovery, where, from defect of evidence, the plaintiff is compelled to resort to the conscience of the defendant; that the bill there, was not of that class, because it did not offer to return the principal, nor pray that the usurious notes, might be given up ; and so far from a defect of evidence, averred, that the plaintiff could prove the usury, by a witness whom ho names : and the court decided, that, as the case was not within the statute, as the plaintiff wanted no discovery, but only that the trustee should be stayed from selling, till the usury could be inquired into at law, the chancellor ought not to have imposed on him the loss of the principal sum, but should have injoiued the sale, until the defendant should before some competent tribunal, establish the validity of his contract; in which case, the injunction should be dissolved; and, in the contrary event, perpetuated. This case was decided in November 1812, by three judges, who were unanimous. In March 1820, the case of Stone v. Ware and Smith was decided by four judges, unanimously. Ware owed Smith a debt: Stone the younger owed Ware a debt: Ware (by the terror of an execution) obliged Stone to agree to give him fifteen per cent, for a forbearance of twelve months—and to procure his father to execute as principal (with Stone the son, and Ware, as sureties) a bond to Smith (who was ignorant of the usury) for the debt with the fifteen per cent, included. Smith got a judgment on the bond; and the Stones filed a bill injoining it on the ground of the usury. The cause was argued in this court twice, very elaborately; the second argument was by direction of the court on two points, 1. Was the contract usurious ? 2. If so, must there be a forfeiture of the whole debt, or only of the usurious interest ? In the last argument Marks and Morris was expressly brought to the view of the court. The decision was, that the bond to Smith, being taken to secure a just debt, without any knowledge of the usury, was not afiected by it: but that as to Ware *502 the usury being proved upon him, the Stones must be relieved, upon the terms, however, of their paying to Ware "principal justly due him, with legal interest.” This case I know, was considered by some of the profession at time (and I think justly considered) as shaking Marks and Morris, in a material point. That case had decided that where the .borrower wants no discovery, but from the form of the contract has no day in court, equity will give him a day, without making him pay the principal sum. In Stone and Ware, the borrower had no day in court, for it was decided that the usury could not avail against Smith. Yet equity, (as the price of its aid) made him pay the principal sum with interest.
Next came McPherrin v. King, heard April 1822, by three judges. This was in all its material features like Marks and Morris. The loan was secured by deed of trust, and the bill stated that the usury could be proved by disinterested testimony. The opinions of the judges, (each differing from the others) shew how unsettled the law of the subject was : and they all declare, that the great question discussed could not be decided by a bare court, but would be held open for future consideration: and judge Roane remarked, that “ the question was very important, and its importance enhanced by the circumstance, that the counsel have arrayed two of the decisions of this court against each other.” (These were Marks and Morris and Stone and Ware). The publication of this case, tended still further to impeach the authority of Marks and Morris.
In 1826, the case of Young v. Scott was decided. There were only three judges. Two were of opinion that “ in all cases, where a party applies to equity for relief against usury, whether he calls for a discovery, or avers his ability to prove the usury, he can only be relieved on the terms prescribed by the third section of the statute.”
I have stated these cases to shew the exact situation of the subject. They clearly evince, that Marks and Morris has long been considered an open case, and the measure of *503 relief in cases of usury, a question wholly unsettled. And this being so, I sincerely lament, that the point has again come before us, when one of our brethren, and all the elder members of our bar, are attending a higher duty in another place. I shall however, give, as briefly as I can, my view of the case of Maries and Morris.
The opinion of the court represents the bill in that case, as seeking no relief from the usury, by the decree of the court of equity, but merely that equity would injoin the sale, till the fact of usury should be tried in some proceeding at law. It struck me, as strange that a bill should be thus framed by counsel; for so far as my researches have gone, the annals of jurisprudence furnish no precedent for it. I was therefore induced to examine the original record ; and it is now before me. After stating the case, with the facts constituting usury, the bill proceeded thus: “ And your orator is advised, that by the laws of the land, the aforesaid deeds of trust, being conveyances and assurances for the payment of money loaned, on which a higher interest is reserved, than six dollars for the forbearance of a hundred dollars, and after that rate; such deeds are not merely voidable, but are ipso facto utterly and absolutely void; and, consequently, that any sale under them, would be of no effect in law or equity.” And the prayer was, “ that the sale of property might be forthwith stopped ; that all proceedings under the said deeds of trust might be injoined, and the trustee inhibited from selling, and the same by a decree of this court declared null and void.” General relief is then prayed. This seems to me, not an application merely to stay the trustee, till another forum could decide on the usury; but a direct appeal to equity for ultimate and final relief.
But, upon the supposition that in this I am wrong and the court right, I will proceed to examine the reasons of their opinion.
The court lays it down, 1. That, in a bill to perpetuate testimony touching a question of usury, equity will not im *504 pose conditions on the plaintiff, and cites, in support of this position, Suffolk v. Green, 1 Atk. 450. It is very true, that in that case lord Hardwicke overruled a demurrer to a bill to perpetuate testimony as to a bond charged to be usutioos- The demurrer was on the ground, “ that the bill sought to subject the defendant to a penalty, and though, on the plaintiff’s own shewing, there was a large sum lent, he does not offer to pay what was really due.” The demurrer was overruled, because it went too far, and being bad in part, was void in toto. But is there any resemblance between a bill to perpetuate evidence, and the bill in Marks and Morris ? To my understanding, they are wholly different. That is a proceeding merely to enable a party to examine a witness de bene esse; to guard against the accident of death, in a case where he cannot immediately have an investigation in a court of law. The only reason why the bill need state the subject, and the facts to which the witness is to be examined, is, to shew the plaintiff’s interest, and therefore his right, to perpetuate the evidence, and also to shew, that he who is made defendant is interested in the subject matter. But the defendant is not called on to answer : if he be, he may demur. Thus in the case of Suffolk v. Green, lord Hardwicke says, “ so far as the present bill, prays the defendants to put in an answer, so far it is a bill of discovery, for the answer must necessarily go to the usury charged in the bill. The defendants (he adds) have demurred to so much of the bill as seeks any discovery, and to perpetuate the testimony. As to the first part, that it would subject the defendants to a penalty, the demurrer is proper, and if it had gone no farther, must have been allowed as an usual case.”. Now, in Marks and Morris, the bill, after setting out the usurious contract, and making defendants, prayed,' “ that they on their corporal oaths, might full, true and perfect answer make, to the premises, as fully as if the same, were therein again, particularly set forth and expressed thus directly demanding an answer to the very fact of usury. (And the hill in the case before us has the *505 same demand). Is it possible, then, to bend the case of Suffolk and Green, into an authority supporting Marks and Morris ? On the contrary, does it not shew, that Marks and Morris, demanding an answer to the usury, without waving the penalties, was demurrable; unless you could bring the case within the third section of our statute, where the law waves the penalties, and thereby, perhaps, dispenses with the necessity of a waver in the bill; but the court went upon the express ground, that Marks and Morris was not within the third section.
2. The next position of the court was, that on a bill for a new trial, where the judgment has been obtained, by surprise or accident in a case of usury, equity will impose no conditions, but simply grant the now trial, in which the whole contract may bo vacated, if the usury be proved. I understand the court here to mean, that upon the new trial, if the jury find the usury, the court of law will render judgment for the defendant, and make an end of the cause, without certifying the verdict to the court of chancery, to be proceeded on there. This is new doctrine to me; and seems to violate both principle, and practice. I find it laid down in many books, that equity cannot set aside a judgment at law: it can on a final hearing order a plaintiff to enter satisfaction ; but this is not acting on the judgment directly. It is a power which equity exercises over the person, and evil conscience of the party : but the party may refuse, and stand out in contempt. So, equity may decree a perpetual injunction; but this operates in the same way; not touching at all the jurisdiction of the common law courts, or assuming appellate power. Thus in Barnesly v. Powel, 1 Ves. sen. 284. lord Hardwicke says, “ though this court cannot set aside a judgment of a common law tribunal, obtained against conscience, yet it will decree the party to acknowledge satisfaction on the judgment though he has received nothing.” Every new trial which is granted, is of necessity preceded by setting aside the judgment (if one has been rendered) and verdict, and reinstating the cause. The court of law, *506 without these steps, cannot have possession of the cause, as it had before. But as equity cannot set aside the judgment, how can it replace the cause on the law docket, and enable the law court to render another judgment on it? It has not die power (as I conceive) nor can I find, that it has ever attempted to exercise it. What it does in such cases, is, to entertain the bill, injoin the judgment at law, till further order, and if a proper case is made, direct a new trial of the issue. This it may do, either in the same or a varied form, and in the same or any other court: in all such cases, the law court has nothing to do, but preside over the trial of the issue, and certify it to the chancery court; which, on the final hearing, administers relief (if at all) on its own principles. Wilson v. Rucker, 1 Call 500. Ross v. Pynes, 3 Call 568. Thus, if judgment be recovered on a bond given on a usurious contract, and the obligor files a bill, stating the usury, and that he had summoned a witness who would have proved it, but he fell sick on his way to court, which, not being known to him, a judgment was obtained on the bond he. equity will award an injunction. If the defendant by his answer, confesses the usury, an end Will be made of the case at once : if the answer denies the usury, the court will order a new trial of the issue; and if usury be found, will (as I suppose) dissolve the injunction, except as to the usury, interest on the principal sum, and the costs in equity. Or, perhaps, the more correct practice would be, to grant the injunction at first, only for the usurious excess, the interest, and such a sum as would probably cover costs. But, in no such case, could the court of law, or would equity “ vacate the whole contract.” This would violate two of the fixed and fundamental maxims of equity: that he who asks equity shall do it to the same person; and, that equity will never lend its aid to enforce a penalty. It is under this second head, that unless the bill waves all penalties, a demurrer will hold. Under the first, it is the uniform, unvarying practice of courts of equity, never to relieve against judgments, no matter how gross the fraud *507 by which they were obtained, but upon the terms of the defendant paying what is justly due; and the same rule applies to any other security binding at law: he who asks equity must do it. It is scarcely worth while to quote cases to prove this: it is laid down in Smith v. Burroughs, 2 Vern. 346. and many other books. Nor does the measure of this relief depend at all on any appeal to the defendant’s conscience, or discovery made by him: the rule is precisely the same, whether the case be made out by the discovery of the defendant, or by evidence aliunde. These are mere modes of arriving at truth, and do not affect the principle on which the court proceeds. In all cases, the plaintiff has a right to compel a disclosure from the defendant, provided he does not thereby subject himself to fines, forfeitures, pains or penalties. These are the only grounds of exception j and his confession entitles him to no advantage, save this, that to overweigh his answer (where in his own favour) there must be two witnesses or one with circumstances. These principles are general, and apply as well to cases of usury as others. A defendant, therefore, by confessing the usury, gains nothing, nor can a plaintiff by proving it aliunde, absolve himself from the necessity of doing equity when he asks it.
That this rule requires of a borrower to return the principal sum, courts of law, so far as their forms will permit, and courts of equity throughout, have proclaimed. We know, that there are actions at law, which are called equitable actions : assumpsit for money had and received, is of that class, and has been likened to a bill in equity. The case of Tomkins v. Bernet, 1 Salk. 22. was an action of assumpsit for money paid on an usurious contract: and lord Mansfield, speaking of it (in Jones v. Barkley, 2 Doug. 697.) says, “ the case must have been to recover back what had been paid in part of principal and legal interest upon an usurious contract; and, therefore, the action would not lie $ for so far as principal, and legal interest went, the debtor was obliged, in natural justice, to pay; therefore, *508 he could not recover it back. But for all above legal interest, equity will assist the debtor to retain, if not paid, or an action will lie to recover back the surplus if the whole has been paid.” Again; in Fitzroy v. Gwillim, 1 T. R. 153. goods were pawned as a security upon an usurious contract: the borrower brought trover for the goods : lord Mansfield said, “ This is an equitable action brought by the plaintiff, in order to be relieved from an usurious contract. She must come, therefore, with clean hands, according to the principle laid down in Bosanquet v. Dashwood, that those who seek equity, must do equity. It was there determined that a court of equity would afford relief in such cases upon payment of principal and interest. A lender upon an usurious contract, is precluded from recovering any thing upon such contract; but if a borrower seek relief, he must first do what is right as between the parties. Here the plaintiff did not tender what had been actually advanced, and cannot therefore have the benefit of this equitable action.” Buller and the court agreed with him. This is the language of the court of law.
Turning now to the cases in equity, I shall cite a few to shew that they have been uniform and decisive to the same point. And here the difficulty is, which, to select among the multitude that offer. In Henkle v. Royal Exchange Co. 1 Ves. sen. 317. lord Hardwicke lays it down as a general rule, that neither law nor equity will relieve a party to an illicit contract: “ But (he says) one exception occurs, in which equity differs from the common law; and that is the case of usury, in which equity suffers the party to the illicit contract to have relief. But that depends on a distinct reason; that whoever brings a bill in a case of usury, must submit to pay principal and interest due, on which the court lays hold, and will relieve; with this further reason, that this court considers usurious contracts, in somewhat a different light from what a court of law does; which considers them upon the foot of the statutes, but this court, as a fraud and advantage taken of necessitous persons.” In *509 Brownsword v. Edwards, 2 Ves. sen. 246. and Pit v. Cholmondeley, Id. 567. lord Hardwicke speaks the same language. In Scott v. Nesbit, 2 Bro. C. C. 649. and 2 Cox. 183. there was a judgment at law, and application to equity to set it aside for usury: and lord Thurlow said, “ I take it to he a universal rule, that if it be necessary for you to come into this court, to displace a judgment, you must do it upon the equitable terms of paying the principal money really due, with lawful interest; and upon the best consideration I have been able to give the case, I have no idea of doing it upon any other terms.” After a few other remarks he concludes thus: “ But at any rate, I consider it as a universal rule, that you shall not, in this court, set aside a judgment at law, without offering complete equitable terms, that is to pay principal, with legal interest.” In ex parte Scrivener, 3 Ves. & Beam. 14. lord Eldon holds the same language : “ at law (he says) you must make out the charge of usury; and in equity, you cannot come for relief, without offering to pay what is really due; and must either prove the usury by legal evidence, or have the confession of the party.”
With respect to the case of Cook v. Jones, 2 Cowp. 727. relied on by this court in Marks v. Morris, it is one of a class of cases, of which the books furnish us with some six or seven, viz. Middleton v. Hill, Cro. Eliz. 588. Bush v. Gower, Ca. Temp. Hardw. 233. 2 Stra. 1043. Machin v. Delaval, Barnes’s notes 52, 277. Mathews v. Lewis, 1 Anstr. 7. Edmonson v. Popkin, 1 Bos. & Pull. 270. Hindle v. O'Brien, 1 Taunt. 413. These were judgments confessed on warrants of attorney; and an examination of them will show, how fluctuating and unsteady the practice of the common law courts has been with respect to them. In one, after the issue had found the usury, they ordered the power of attorney and bond to be delivered up: in another, they refused to interfere, saying it was usurping equity jurisdiction: in Hindle v. O'Brien, on a motion to set aside the judgment and direct an issue to try the usury, the other *510 party admitted the usury; and this rendering an issue use- ^ " less, the court granted relief upon the principles of a court of equity, compelling the defendant to pay what was really due with legal interest. In Cook v. Jones, the issue was directed; but we have no farther report of the case, and therefore do not know what was the result, whether the usury was proved, and if so, what relief the court of K. B. gave; but when we remember the opinions of lord Mansfield and the court, in the two cases above quoted, we may presume, that they would give none but equitable relief. But, whatever may be the course of the law courts, it is surely no precedent to regulate courts of equity, which administer relief upon, their own principles. This very case of Cook and Jones, was cited in the argument of Scott and Nesbit, before lord Thurlow: in his opinion, he merely mentioned the case, and remarked, that there were several cases, where, upon judgments, the courts of law had directed issues to try the question of usury ; and then he went on to lay down the universal rule in equity, in the strong language above quoted.
The case of Fanning v. Dunham, 5 Johns. Ch. Rep. 122, was precisely like Marks and Morris; the usurious debt was secured by a mortgage having a power of sale, by which it could be executed without coming into equity; the sale was advertised, and the borrower filed his bill for relief: chancellor Kent reviewed all the cases both at law and in equity, and concluded that there is no relief in equity but upon paying principal and interest. “ It is perfectly immaterial (he says) in respect to the application of the principle to the case of the debtor who sues here, whether the usury be confessed by the defendant in his answer, or be made out by proof. The plaintiff must still consent to do what is just and equitable on his part, or the court will not assist him, but leave him to make his defence at law as well as he can,”
3. It is laid down by the court in Marks and Morris, that, from the power of the trustee to sell, the borrower is deprived of the possibility of defending himself at law by proving the usury, and the statute repealed as to deeds of *511 trust, unless equity will, without imposing conditions, stop the trustee, until a court of law can try the usury. But is it true, that the borrower lias no mode of defending himself, and pleading the usury without this interposition ? I think not. He has given a deed of trust on his land; but he retains possession; that is never taken from him till the sale. Let him hold on still, and forbid the sale; and if the trustee sells, the vendee must bring ejectment, and on the trial of that, I hold that the defendant may shew the usury and defeat the deed, and the whole proceeding under it. This cannot be denied. But it is said, this course would subject the borrower to the hazard of great loss; because the sale of the land, under such a cloud, would be at far less than its value, and then he might fail in the proof of the usury, and the vendee recover in the ejectment. But, how can we suppose he could fail in the proof, when it is a part of his case that he is full handed, and therefore wishes no discovery ; and when it is solely because he wants no discovery, that his case is attempted to be taken out of the third section of the statute ? And suppose it conceded, that deeds of trust do deprive the borrower of all chance of shewing the usury at law, and do so far elude the statute as to ensure to the usurer his principal, in all cases where these securities are given: would this authorise the court to remove the great land marks, to reverse the fundamental principles of equity? to make it the instrument of enforcing penalties, instead of relieving against them ? I trust, that in the appropriate forum, none are prepared to go further than 1, in enforcing the statute of usury to its full extent; and I may refer to the case of Whitworth and Adams and others, as evidence of this: but even to effect this important end, I cannot consent to violate principles, which chancellors hold sacred, and to transfer to equity the functions of the law courts. If this is to be done we must call in the legislature. It is the folly of the party to execute such a deed as places him beyond the reach of the law courts. He is just in the same situation, as if he had paid the usurious *512 claim instead of resisting it; in which case, he can recover back only the usurious excess. The law has put it in the power of every one, who has not deprived himself of the means, to plead the usury, and avoid the whole contract: but if by his own act, or by accident, he has lost these means, he has still the power, by the aid of equity, and under our statute, to procure relief from the usurious exaction, by the payment of the principal received, clear of all interest and costs. In this situation of things, though anxious for the suppression of usury, I am still more anxious to restrain equity within those limits, and to preserve to her those attributes, which have been consecrated by the wisdom of ages.
I have proved (if authority can prove any thing) that, in England, where there is no statute law to that effect, the courts of equity had, before the passing of our statute, established the rule, that a borrower at usury, may be relieved, on the terms of doing equity; that is, paying principal and interest. Can it be doubted, then, that this rule, this practice, of the english courts, was meant to be made law by the third section of our statute ? I cannot doubt it. The law in my opinion is as broad as the practice, taking in every case, where the aid of equity is asked, whether from defect of evidence, or any other cause.
But, if it were admitted, that the third section of our statute was restricted to bills of discovery, the conclusion would by no means follow, that in every other case the plaintiff would be absolved from paying the principal borrowed : on the contrary, the equity rule being that in all applications to that tribunal for relief from usury, die borrower must pay principal and interest; if our statute takes bills of discovery only out of that rule, it follows that in all other cases, both principal and interest must be paid. But my opinion is that our act takes in all cases.
Upon the whole, I am firmly convinced, that Marks and Morris is not law, either taken generally, or restricted in its application to deeds of trust. In the case before us, I think the'decree ought to be affirmed.
*513 Brooke, P.
The facts of this case bring it within the principle on which the case of Marks and Morris was decided. After the lapse of seventeen years, during which that case has been considered as settling the principle in all similar cases, it was to he expected, that it would not be disturbed, especially as it has been indirectly sanctioned by the omission of the legislature to interfere, a great portion of the members of which have been conversant with it.
It is of more importance to decide the causes in this court, than to settle or unsettle the law: therefore, I shall review the case of Marks and Morris, very briefly.
I cannot think, that that case violated any of the principles of equity, which have been so much insisted on. The court that decided it, were not unmindful of those principles; and its capacity to distinguish and apply them, will best be tested by a short examination of the case itself.
It did not (as I understand it) violate the principle, that a court of equity will not lend its aid to enforce a penalty. In the cases to which that principle is applicable, equity refuses its aid, because it is the peculiar province of the courts of law to enforce penalties; and there has been no necessity, in any of the cases which have been determined on that principle, for equity to open the door of the courts of law, to the party asking its aid. The principle, that he who seeks equity must do equity, had as little application to the case of Marks and M.orris; for, there, no relief was to he granted on the merits, though prayed for in the bill. Neither did the case touch any principle applicable to bills for discovery of usury, or to bills to perpetuate testimony: the aid afforded by the court, was not at all of the nature of the aid prayed in a hill to perpetuate testimony; and the hill was not framed on the third section of our statute against usury, relating to bills for discovery of usury. The court only gave its aid, to prevent a sale of the plaintiff’s property, under a deed of trust charged to be usurious, until that controversy could be tried in a court of law, or until the defendant should himself resort to the court of equity. *514 to ask its aid to sell the trust subject under the deed of trust, as in the case of a mortgage, and thus present the question jn controversy to the chancellor for adjudication. The court said to the defendant, You shall n'ot execute your deed of trust, by a sale of the plaintiff’s property, before he has had an opportunity to contest the validity of the contract, before some competent tribunal; which, but for the contract being in the form of a deed of trust, you could not deprive him of; and you shall not avail yourself of the mere form of the contract, to deprive him of the opportunity to contest the validity of it. Acting diverso intuitu, the court would not, and it did not, forestal the merits of the controversy: it would not look to the consequences of a trial of them: it only held, that there ought to be some opportunity afforded for a fair trial of them. It would not subject the plaintiff, complaining of the usury, to the alternative, of submitting, in silence, to the sale of his property under an illegal contract, before he had had any opportunity of controverting it, or of contributing to that sacrifice of his property, which would result from giving notice of the usury, in the event that he should not be able, after the sale, to prove the usury in a court of law. To impose the first alternative on the plaintiff, would have been to subject him, to a penalty, for not paying the money secured by the deed of trust; that is, to a sale of the trust subject, before the validity of the contract was tried in some competent court, as in the case of a mortgage; and the latter alternative would have exposed him to a controversy with the purchasers under the deed of trust, which ought not to have preceded the controversy concerning the validity of the contract; and would have exposed the purchasers to danger, in the event that the usury charged should have been after-wards proved.
The deed of trust, in short, presented a new case, that was to be met by a principle, which, violating none of the established rules of a court of equity, was essential, as well to the policy of the law, as to the justice of the particular case; the principle, namely, that a party shall not, by the *515 form of his contract, evade a controversy concerning its legal validity, and thereby subject his adversary to consequences from which the law,intended to protect him. The interferenco of the court in Marks and Morris, was, then, clearly within the province of a court of equity; which, though it would not, in such a case, enter into the merits of the controversy, would so far aid the plaintiff, as to send or leave the case to the proper forum.