Baldwin. J.
delivered the opinion of the Court.
It appears to the Court, that by the contract between James S. Arthur and John B. Steenbergen, in the proceedings mentioned, Arthur agreed to pay to Steenbergen the sum of forty thousand dollars, in certain deferred instalments, with interest thereon from a period shortly subsequent to the date of the contract, in consideration of certain advancements to the like amount to be made by Steenbergen to Arthur, as follows, to wit: a certain portion of said amount in certain pre-existing debts due,from Arthur to Steenbergen, which Steenbergen .agreed % surrender, and another portion thereof in certain other debts which Arthur owed to other persons, .and which Steenbergen agreed to pay, and the remaining portion thereof in certain bank and railroad stocks which Steenbergen agreed to transfer to Arthur, which stocks it was agreed should be taken by Arthur at prices greatly above their then market value; which sum of 40,000 dollars so to be paid by Arthur to Steenbergen it was agreed should be secured by Arthur's bond and deed of trust in the proceedings mentioned; and which stipulations in relation to pre-existing debts due from Arthur to Steenbergen, and to the payment by Steenbergen of other debts due from Arthur to other persons, and for the transfer of stocks from Steenbergen to Arthur, formed connected, inseparable and mutually dependent parts of one entire contract, made upon a negotiation for the forbearance and loan of money, and for the purpose of enabling Arthur to raise money to relieve him from then existing pecuniary difficulties. The Court is therefore of opinion, that the said contract between Arthur- and Steenbergen, and the said bond and deed of trust executed by Arthur in pursuance thereof, were usurious and void.
*183 And it further appears to the Court, that after the execution of said bond and deed of trust by Arthur, Steenbergen assigned the same absolutely to the Bank of Washington, but in order that the same should enure as collateral security to the bank for certain debts due from Steenbergen, and without notice on the part of the bank that said bond and deed' of trust were in any wise tainted with usury; of which absolute assignment notice was shortly thereafter, but when it was publicly known that Steenbergen had become insolvent in his circumstances, given by the bank to Arthur; who thereupon, without disclosing the usurious character of said contract, made no objection thereto, and consented to the performance thereof on his part. But the. opinion that this conduct of Arthur cannc a new contract between him and the banllj ment of the money secured by the said ,tion therefor moving from the bank, nor any chang\in ílfPíelda&X.. of the contract between Arthur and Steenh any agreement of the bank to do or forbear to do any act in regard either to Arthur or Steenbergen. Nor can the said conduct of Arthur, in regard to the bank, nor his subsequent conduct in impeaching said securities in the hands of the bank as usurious and void, be treated as fraudulent; the former not appearing to have proceeded from any fraudulent intent, and the latter not appearing to have occasioned any substantial loss to the bank ; inasmuch as the loss to the bank has been merely of the chance to obtain from its insolvent debtor the substitution of other collateral security, in lieu of the usurious and void securities aforesaid, for a debt already secured to the bank by bills accepted and endorsed; and there being no proof, or even allegation, on the part of the bank, that the acceptors and endorsers are not perfectly solvent and responsible therefor, or that from any cause the bank has been or will be prevented from *184 obtaining payment of the said debt, or any part thereof. The Court is therefore of opinion, that Arthur, and those claiming under him, are in no wise estopped from impeaching the said bond and deed of trust as usurious and void in the hands of the bank, and obtaining all proper relief against the same.
And the Court is further of opinion, that it is unnecessary to decide whether the doctrine held in Marks v. Morris, 2 Munf. 407, ought to prevail in cases of the same character with that, inasmuch as in the opinion of the Court the doctrine of that case is not properly applicable to this. In the case of Marks v. Morris, the usury alleged having been proved by the evidence, the trustee in the deed of trust given by the borrower to secure the usurious debt was enjoined from selling the property thereby conveyed, until by some proceeding, to be instituted by the lender, he should establish the validity of his contract. The principles of that decision were that the usurious contract being avoided by the statute, no part of the debt could be recovered at law, and the proceeding of the lender under the deed of trust to enforce payment being in pais, the borrower had no day in Court for the purpose of making his defence, and was entitled to the aid of a Court of Equity to enable a Court of Law to avoid the usurious contract altogether, and so prevent the borrower from being subjected to the loss of the principal money. But in that case, the whole debt was created by the usurious contract, which embraced no pre-existing bona fide debt; whereas in the present case, the usurious contract did embrace a preexisting bona fide debt, which might have been recovered in an action at law, to which its having been embraced in the subsequent usurious contract would have been no defence. The tendency of the decision in Marks v. Morris, was, by an abrogation of the usurious security, to defeat a recovery of the usurious debt, there being no remedy at law upon the usurious con *185 tract, which contract created the entire debt. The ap3 plication of that authority to the present case would be to defeat the recovery of the pre-existing bona fide debt, by abrogating entirely the usurious security, and leaving the creditor to an unproductive remedy at law upon the pre-existing valid contract. The Court in Marks v. Morris, thought it proper that a Court of Equity should give its aid to defeat indirectly the recovery of the usurious principal, as well as the usurious interest; but its decision does not indicate an opinion that it would be proper for a Court of Equity to give its aid in any form to defeat, by rendering unavailing, the recovery of a preexisting bona fide debt.
The Court is further of opinion that though the bill in the present case is founded upon the doctrine of Marks v. Morris, and looks entirely to the measure of relief thereby indicated, yet inasmuch as it presents a case which upon the facts disclosed entitles the debtor and those claiming under him to relief against the usurious contract and securities, upon equitable terms; it is proper, instead of dismissing the bill to decree such relief as the general principles which govern Courts of Equity indicate and require.
The Court is therefore of opinion, that the Circuit Court erred in decreeing the injunction which had been awarded in the cause, to restrain the sale under said deed of trust, to be continued in force until the question of usury should be decided by a Court of Law, upon some regular proceeding upon said bond or deed, to be instituted by the defendants or any of them, and until the further order of the said Circuit Court, upon a certificate of such decision; instead of proceeding to ascertain the amount justly due from Arthur to Steenbergen, by debiting the former with all bona fide debts due from him to the latter prior to the execution of said bond and deed of trust, and with all advances made by Steenbergen to Arthur, or made for him in payment of debts *186 due by the latter, and with lawful interest from the proper periods on such pre-existing debts and on such advanees; and where such advances were made by the transfer of stocks charging only the market value of such stocks at the time of the transfer; and by allowing Arthur all proper credits to which he is entitled against such debits; and after so ascertaining the amount of the principal and the interest thereon so due from Arthur to Steenbergen, or to the Bank of Washington as his assignee, decreeing the said bond and deed of trust to stand as securities for that amount of principal and the interest thereon, and for no more, and payment thereof to be enforced, if necessary, by a sale under the direction of the Court of the property conveyed by the said deed of trust.
It is therefore adjudged, ordered and decreed, that the decree of the Circuit Court be reversed and annulled, and that the appellant recover against the appellees Arthur and Hupp, the costs expended by the appellant in the prosecution of this appeal: and the cause is remanded to the Circuit Court to be further proceeded in according to the principles of the foregoing opinion and decree.
Brooke, ./.
I am sorry to differ with my brother Judges, in this case. I think the decree of the Court below entirely correct, on the principle of Marks v. Morris, which was explained by myself in delivering the opinion of the whole Court in Martin v. Lindsay’s adtn’rs, 1 Leigh 499. As a compromise, I was willing in this case to reverse the decree, dissolve the injunction as to the good debt, and direct the trustees to sell as much of the property as would pay that debt; leaving the balance of the decree to remain; and sending the supposed usurious debt to the Court of Law on the principle of Marks v. Morris: though I cannot see why the general principles of a Court of Equity should *187 contravene the provisions of a statute, or disregard the rules of law, which would subject the good and usurious debt to the same fate, when included in the same bond and deed of trust, as in the case before us.
The case of Marks v. Morris has been understood as the law in cases similar, for more than twenty-five years, by bar and bench; and by many members of the Legislature; and never objected to, that I know of; and if overruled, would repeal the act against usury, in all cases of deeds of trust: to subject which to a trial at law, was the object of that decision.
If by blending a good with a usurious debt, in a bond and deed of trust, as in the case before us, the good debt is to protect that which is usurious from a trial at law, then the act against usury is repealed as to such deeds of trust; and all such cases are brought within the principles of a Court of Equity.
The plaintiff Arthur did not come into a Court of Equity for relief on the merits; but to get his relief in a Court of Law; according to the principle of Marks v. Morris. So the Court below understood his bill, and sent the case to a Court of Law. Hence, the principle that he who comes into equity for relief must do equity does not apply. The plaintiff comes with a different intent. His bill is not framed for relief on the merits, but on the principles of the case of Marks v. Morris; and ought to be so treated by this Court.